The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Richard B. Ford and the oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; or to amend the Opinion and Award. At the call of the case on 28 October 1994 only Plaintiff was present. No one appeared at the hearing in behalf of the Defendants.
On 16 August 1994 counsel for Defendants filed a Motion asking that further evidence be taken with respect to medical issues. That Motion is hereby denied. Plaintiff's evidence shows an on-the-job accident and resulting injury as set forth in the medical records he tendered, which were admitted into evidence. Such evidence is sufficient to support the result reached by the Deputy Commissioner and hereby affirmed by the Full Commission.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In February 1988, plaintiff was hired by defendant-employer as a working president to manage and oversee its manufacturing operation of making small wooden parts.
2. As a working president, plaintiff not only was responsible for the administrative duties of running the business but performed such manual duties as sweeping, maintaining the electrical circuitry, performing the maintenance, prepare work, supervising the employees and overseeing the general production and performance of the business.
3. As part of these duties, plaintiff contracted with defendant-carrier to provide workers' compensation insurance coverage for the business as provided under the North Carolina Workers' Compensation Act.
4. On 16 July 1991, while plaintiff was carrying out and performing the duties of his employment in assisting an employee to operate some equipment and as plaintiff was descending from a trailer, plaintiff slipped and fell approximately four feet to the floor of the building where he was working. Plaintiff landed on his hands and knees, injuring both wrists, left arm and left knee as well as the cervical spine.
5. Although plaintiff continued to work and perform his duties on 16 July 1991, within a few hours plaintiff began to suffer pain in both his wrists and arms and cervical spine.
6. With respect to the left knee, plaintiff sustained a laceration which he has treated himself and has not sought medical care or treatment for this left knee injury.
7. On 17 July 1991, plaintiff sought medical care and treatment for the injuries to his wrists and left arm and cervical spine including an orthopedic doctor, a neurologist and a chiropractor, which treatment continued until August of 1992 and thereafter until sometime in 1993.
8. It has been medically diagnosed that plaintiff has sustained traumatic carpal tunnel syndrome to both wrists, a crushed nerve involvement of the left elbow and traumatic strain of the cervical spine resulting from the injury sustained on 16 July 1991.
9. Throughout plaintiff's period of medical care, plaintiff has been principally cared for by chiropractic treatment and upon those occasions when he was referred to medical doctors such as neurologists for testing such as nerve conduction tests and evaluation, after such evaluations plaintiff has been referred back for continuation of the chiropractic treatment.
10. With respect to his disabilities, plaintiff has the following symptoms and disabilities:
 a. Plaintiff's right hand, which is dominant, is no longer dependable to perform the work duties which he had previously performed in that he can no longer hold a drill for the purpose of drilling, can no longer use a hammer for driving nails and finds the grip in his right hand unreliable.
 b. Plaintiff s left hand and forearm are constantly numb and grip undependable.
 c. Plaintiff's cervical spine or neck is intermittently painful and cannot rotate his head to the right without experiencing pain in his neck at which time he experiences blurring of his vision.
11. On 16 July 1991, plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer as follows:
a. Traumatic carpal tunnel syndrome of the right wrist.
 b. Traumatic carpal tunnel syndrome of the left wrist with ulner nerve involvement of the left elbow.
c. Muscular skeletal strain of the cervical spine.
12. Plaintiff reached maximum medical improvement with respect to his disabilities on 20 August 1991 when he was rated under the provisions of the Act as follows:
a. Twenty percent disability of the right wrist.
b. Twenty percent disability of the left arm.
c. Twenty percent disability of the cervical spine.
13. Since the incident on 16 July 1991, plaintiff has been paid his full wages by defendant-employer and has lost no time from work as a result of his disabilities for which he has not been compensated by said defendant-employer.
14. On 16 July 1991 and for the fifty-two weeks prior thereto, plaintiff was earning an annual salary of $40,000.00 which generated an average weekly wage of $769.23.
15. Plaintiff has paid medical bills resulting from the injuries sustained on 16 July 1991 in the total amount of $1,111.99 and has incurred medical expenses of $88.00 as follows:
a. King Clinic, $345.00.
b. Carolina Neurologolic, $669.00.
c. Eckerd Drugs, $97.99.
d. Crown Point Chiropractic, $88.00.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 16 July 1991 the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On 16 July 1991 an employer-employee relationship existed between the parties.
3. On 16 July 1991 American States Insurance Company provided the coverage to the employer as provided under said Act.
4. The North Carolina Industrial Commission has jurisdiction over the parties and subject matter of this claim.
5. Plaintiff sustained an injury by accident arising out of and in the course of the employment with the defendant-employer on 16 July 1991. N.C. Gen. Stat. § 97-2(6).
6. On 16 July 1991 plaintiff was earning an average weekly wage of $769.23.
7. Plaintiff has lost no time from work for which he has not been compensated by the defendants.
8. Plaintiff is entitled to no temporary total disability compensation benefits by reason of his claim of injury occurring on 16 July 1991. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to permanent partial disability compensation benefits for 148 weeks at the rate of $406.00 per week commencing 20 August 1991. N.C. Gen. Stat. § 97-31 based upon the ratings of his treating chiropractic physician.
10. Plaintiff is entitled to the payment of past, present and future medical expenses by the defendants which result from the injury by accident occurring on 16 July 1991 and which may tend to give him relief from or effect a cure of the disabilities which he has sustained by reason of said injury by accident and as a part thereof is entitled to be reimbursed $1,111.99 for medical expenses which he has personally paid and for payment of the Crown Point Chiropractic bill of $88.00 which has been incurred. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation benefits for 148 weeks at the rate of $406.00 per week commencing 20 August 1991.
2. Defendants shall pay to plaintiff $ 1,111.99 as reimbursement for medical expenses paid by plaintiff and $88.00 to Crown Point Chiropractic as medical expenses incurred and unpaid.
3. Defendants shall pay all past, present and future medical expenses resulting from the injury by accident occurring on 16 July 1991 and which may tend to give plaintiff relief from or effect a cure of the disabilities which he has sustained by reason of said injury by accident when the same have been presented to the Commission through the Carrier and approved by said Commission.
4. Defendants shall pay the costs.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ____________________ DIANNE C. SELLERS COMMISSIONER